```
                         FILED
                       OCT 23 2017
              UNITED STATES BANKRUPTCY COURT
              EASTERN DISTRICT OF CALIFORNIA
```

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>HENRY PETERSEN,<br><br>    Debtor.<br>_____ | Case No. 14-24756-A-7 |
| HENRY PETERSEN,<br><br>    Plaintiff,<br><br>vs.<br><br>INTERNAL REVENUE SERVICE,<br><br>    Defendant.<br>_____ | Adv. No. 14-2255<br><br>Date: October 19, 2017<br>Time: 9:30 a.m.<br>Dept: A |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The plaintiff and debtor, Henry Petersen, brought this adversary proceeding against the United States in order to determine the dischargeability of his income tax liabilities for 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, and 2009. See 11

U.S.C. § 523(a)(1).

This court is the proper venue for this proceeding. See 28 U.S.C. § 1409.

The claim concerns the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(1). This is a matter within the court's core jurisdiction. See 28 U.S.C. § 157(b)(2)(I). The court may enter a final order. Stern v. Marshal, 131 S. Ct. 2594 (2011) and Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 134 S. Ct. 2165 (2014).

The proceeding was tried by the court without a jury on October 19, 2017, at 9:30 a.m. While the court received brief testimony from the plaintiff concerning the reason he failed to file timely tax returns for nine years, all other facts were agreed to by the parties and were presented in a written stipulation filed on September 15, 2017.

In addition to stipulating to most of the material facts, the parties agreed that the plaintiff's income tax liabilities for 2003, 2004, 2005, 2006, and 2009 were discharged in the plaintiff's bankruptcy case. They further agreed that all penalties and interest on the taxes due for all years at issue, 1999 through 2006 and 2009, were discharged.

Therefore, only the plaintiff's income tax liabilities for 1999, 2000, 2001, and 2002 are at issue. Based on the facts and the law discussed below, the court concludes that these taxes are excepted from discharge by 11 U.S.C. § 523(a)(1).

///
///
///

## Findings of Fact

1. For 1999 through 2002, the plaintiff did not file his federal income tax returns when they were due. Nor did he request extensions to file those returns.

2. Around September 25, 2005, the plaintiff received Notices of Deficiency from the Internal Revenue Service for his 1999, 2000, 2001, and 2002 federal income taxes. His receipt of these notices did not prompt him to file his delinquent returns nor did the plaintiff file a petition with the Tax Court within 90 days of receiving the Notices.

3. On February 27, 2006, after the time to petition the Tax Court had expired, the Internal Revenue Service assessed the tax liabilities asserted in the Notices of Deficiency: $11,072 for 1999; $10,675 for 2000; $9,762 for 2001; and $6,889 for 2002.

4. In May 2006, the plaintiff received notices that the Internal Revenue Service intended to levy in order to collect the taxes it had assessed.

5. In February 2007, the Internal Revenue Service recorded federal tax liens for these taxes.

6. The plaintiff prepared his federal income tax returns for 2001 and 2002 in May 2007. However, he did not sign these returns until June 2011 when they were also filed.

7. The plaintiff does not recall when his 1999 return was prepared, but it was signed in May 2007 and, like the returns for 2001 and 2002, it was not filed until June 2011.

8. Nor does the plaintiff recall preparing his 2000 return, but it was signed and filed in June 2011.

///

9.　The taxes reported on the plaintiff's four returns were lower than the taxes assessed by the Internal Revenue Service. The Internal Revenue Service accepted the taxes reported by the plaintiff and abated its assessments to $7,177 for 1999; $9,908 for 2000; $8,707 for 2001; and $5,421 for 2002.

10.　Why did the plaintiff fail to file timely tax returns for 1999 through 2002? Why did he fail to request extensions? Why did he ignore the September 2005 Notices of Deficiency, the February 2006 tax assessments by the Internal Revenue Service, the May 2006 notices of levy, and the February 2007 tax liens? Why did the plaintiff prepare returns in May 2007 but not file them until June 2011? The plaintiff offers the same answer to all of these questions. His spouse died in 1999 and his grief left him devastated and unable to focus on preparing and filing his tax returns.

11.　While the court can readily accept that the death of his spouse left the plaintiff emotionally fragile and unable, in the short term, to deal with his taxes, it does not accept that this explains or excuses his failure to file returns and pay taxes over an 11-year period.

12.　Nor does the factual record support the plaintiff's claim that he was so incapacitated by his grief that he was unable to file these returns.

  a.　First and foremost, the plaintiff continued his employment as a waiter throughout 1999 through 2011.

  b.　During this period of time, the plaintiff shouldered the financial responsibility of supporting his adult daughter as well as two grandchildren.

      c.    There is no evidence the plaintiff received medical or psychiatric care for depression or some other condition that prevented him from filing his returns.

      d.    There is no nonmedical corroboration of a lengthy incapacity.

      e.    In 2005, before preparing his returns, the plaintiff admits that he had the presence of mind to attempt to negotiate two payment arrangements with a local Internal Revenue Service office. He even made some payments pursuant to his offers before they were rejected by the Internal Revenue Service.

These facts indicate the plaintiff understood his obligation to file his returns and pay the taxes and that he had the capacity and ability to file returns.

13. On May 5, 2014, the plaintiff filed his chapter 7 bankruptcy petition. He has received a discharge. This adversary proceeding will determine whether the income taxes due for 1999 through 2002 are excepted from that discharge by 11 U.S.C. § 523(a)(1). Their dischargeability hinges on whether the late-filed returns qualify as returns within the meaning of section 523(a)(1) and the "hanging paragraph" following section 523(a)(19) (cited herein as 11 U.S.C. § 523(a)(*)).

14. To the extent any of the conclusions of law below are findings of fact, they are incorporated by reference as findings of fact.

///

///

## Conclusions of Law

15. To the extent any of the foregoing findings of fact are conclusions of law, they are incorporated by reference as conclusions of law.

16. Section 523(a)(1)(i) excepts from discharge income taxes for which the debtor has not filed a return.

17. If a late return is filed, section 523(a)(1)(ii) provides that income taxes are not dischargeable if the return was filed within two years of the filing of the bankruptcy petition.

18. The plaintiff maintains that he filed late returns for 1999 through 2002 more than two years before filing his bankruptcy case. Therefore, he argues that the taxes for these years are dischargeable.

19. However, the plaintiff's late-filed returns are not returns for purposes of section 523(a)(1) due to the effect of section 523(a)(*), which provides in relevant part: "For purposes of [section 523(a)(1)], the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). . . ."

20. The applicable nonbankruptcy law is federal tax law. The Internal Revenue Code, however, does not define what constitutes a federal income tax return. Instead, Beard v. Commissioner, 82 T.C. 766 (1984), affirmed 793 F.2d 139 (6th Cir. 1986) (per curiam), offers a judicially crafted definition. Under it, a filing qualifies as a return if it provides "sufficient data to calculate tax liability"; it "purport[s] to be a return"; the taxpayer has made "an honest and reasonable

attempt to satisfy the requirements of the tax law"; and the taxpayer has "execute[d] the return under penalties of perjury." Id. at 777.

21. The Ninth Circuit has adopted the Beard definition of what constitutes a return for purposes of section 523(a)(1). See Smith v United States (In re Smith), 828 F.3d 1094, 1096 (9th Cir. 2016); In re Hatton, 220 F.3d 1057 (9th Cir. 2000).

22. Therefore, in order to qualify as returns, the plaintiff's filings for 1999 through 2002 had to be an honest and reasonable attempt to comply with the requirement that timely returns be filed. They were not.

23. The plaintiff's filings for 1999 through 2002 were made between 11 and 8 years after they were due, and more than 5 years after the Internal Revenue Service assessed the plaintiff's income tax liabilities without the benefit of his returns. The plaintiff received communications from the Internal Revenue Service in 2005, 2006 and 2007 about his unfiled returns but he chose to ignore them. The emotional toll wrought by the death of the plaintiff's spouse does not adequately explain the failure to file returns over this protracted period of time. See Paragraphs 12(a) through (e) above.

24. The court sees no principled way of distinguishing this case from Smith. In Smith the debtor submitted a return seven years late and three years after the Internal Revenue Service had assessed a deficiency against him. The Ninth Circuit concluded that this was not a return within the meaning of section 523(a)(1) and section 523(a)(*) because it was not an "honest and reasonable" attempt to comply with the filing requirements of the

1 tax code. Smith, 828 F.3d at 1096.

2     25. Like the Ninth Circuit in Smith, it is unnecessary in
3 this case to determine whether a filing after the return's due
4 date can be a return for purposes of section 523(a)(1). Three
5 other circuits, however, have concluded that the filing deadline
6 is an "applicable filing requirement." See 11 U.S.C. §
7 523(a)(*). In these circuits, a return filed just one day late
8 is not a return for purposes of section 523(a)(1). Were this
9 court to follow this line of cases, the plaintiff's taxes would
10 be nondischargeable.

11     26. The Internal Revenue Service takes a position between
12 the Ninth Circuit's decision in Smith and the one-day-late rule.
13 In its view, a late-filed return may be a return for purposes of
14 section 523(a)(1) provided it is filed before a debtor's taxes
15 are assessed without the benefit of a return. Such a late return
16 fulfills its essential purpose – self-reporting and assessment of
17 income tax.

18     27. In this case, the plaintiff's late-filed returns for
19 1999 through 2002 were filed after the Internal Revenue Service
20 had assessed his tax liabilities. Therefore, even under the
21 Internal Revenue Service's policy, these taxes would be
22 nondischargeable. It appears, however, that the Internal Revenue
23 Service's stipulation that the plaintiff's taxes for 2003, 2004,
24 2005, 2006 and 2009 are dischargeable is based on the fact that
25 those returns, while filed late, were filed before the Internal
26 Revenue Service had assessed the taxes without the returns.
27 ///
28 ///

## Conclusion

Therefore, as to tax years 1999, 2000, 2001, and 2002, the income taxes owed by the plaintiff to the Internal Revenue Service are made nondischargeable by section 523(a)(1) because he failed to file returns within the meaning of section 523(a)(*). Based on the stipulation of the parties, the interest and penalties for these tax years are dischargeable as are all taxes, interest, and penalties for tax years 2003, 2004, 2005, 2006, and 2009.

Counsel for the Internal Revenue Service shall lodge a proposed judgment.

Dated: 23 Oct 2017

By the Court

Michael S. McManus
United States Bankruptcy Judge

# United States Bankruptcy Court
# Eastern District of California

## Certificate of Mailing

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities at the addresses shown below or on the attached list.

| | | |
|---|---|---|
| Henry N Petersen<br>200 Coghlan St.<br>Vallejo CA 94590 | Boris Kukso<br>PO Box 683<br>Washington DC 20044 | Robert L. Goldstein<br>100 Bush Street, Suite 501<br>San Francisco CA 94104 |

Dated: 10/23/2017

By: _____
Deputy Clerk